USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/27/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL CONVENTION SERVICES, LLC,
et al.,

                Plaintiffs,

- against -

APPLIED UNDERWRITERS CAPTIVE RISK
ASSURANCE COMPANY, INC., et al.,

                Defendants.

15cv7063 (JGK)

MEMORANDUM OPINION
AND ORDER

---

JOHN G. KOELTL, District Judge:

The plaintiffs[1] bring this action against the defendants[2] for allegedly selling insurance policies that charged the plaintiffs rates not approved by New York State regulators. Two of the plaintiffs, National Convention Services, LLC, and Exserv, Inc., seek to certify a class of of New York businesses that purchased workers' compensation coverage from the defendants. For the reasons explained below, the plaintiffs' motion for class certification is **denied**.

I.

This case concerns contracts for the purchase of workers' compensation insurance. (Am. Compl. ¶ 2.) Workers'

---

[1] The plaintiffs are: Exserve, Inc.; R.D.D., Inc.; R.D.D. Management, Inc.; Madjek Construction, Inc.; and National Convention Services, LLC.

[2] The defendants are: Applied Underwriters Captive Risk Assurance Company, Inc.; Applied Underwriters, Inc.; California Insurance Company; ARS Insurance Agency; Applied Risk Services, Inc.; Continental Indemnity Company; and Applied Risk Services of New York, Inc.

1

compensation insurance covers employers for medical costs and a portion of lost wages if an employee becomes injured or sick as a result of the employee's employment. (Id. ¶ 25.) The plaintiffs state that under New York law, all employers in New York State must secure workers' compensation benefits for their employees. (Id. ¶ 2.) They also state that employers must file with the New York State Department of Financial Services ("DFS") all workers' compensation insurance rates, rating plans, rating rules, rate manuals, and policy forms. (Id. ¶¶ 2-3.) Once an insurance rate is approved by DFS, the insurance carrier may not deviate from the approved rates without approval from DFS. (Id. ¶ 3.)

Typically, employers purchase either "guaranteed cost" policies or "retrospective rating plan" policies. (Id. ¶ 33.) Both policies transfer underwriting risk to the insurer, which means that if an employer's workers' compensation claims exceed the amount of premium paid, the insurer pays the excess amount. (Id.) However, the plans differ in how the costs are fixed. Traditionally, a guaranteed cost policy fixes the premium at the outset of the policy period, meaning that the premium does not change regardless of how many claims are filed during the policy period. (Id.) Retrospective rating plan policies, on the other hand, are loss-sensitive, meaning that the premium charged at the beginning of the policy period is subject to change

2

depending on the claims filed during the policy period. (Id. ¶ 34.)

The plaintiffs claim that the defendants sold them guaranteed cost policies and that the defendants submitted those policies for approval to DFS. (Id. ¶ 37.) However, after DFS approved the guaranteed cost policies, the defendants entered into agreements with the plaintiffs called "reinsurance participation agreements." (Id. ¶ 4.) The defendants did not file the reinsurance participation agreements with DFS or receive approval by DFS to enter into these agreements. (Id. ¶ 37.) The reinsurance participation agreements altered the terms and conditions of the guaranteed cost insurance policies by converting those policies into quasi retrospective rating plans. (Id. ¶¶ 37, 45.) This effectively removed the guaranteed cost feature of the policies and imposed higher, unapproved rates on the plaintiffs.

The plaintiffs brought this suit against the defendants seeking to void the arbitration provisions in their contracts, and for rescission, breach of contract, violation of New York General Business Law § 349, and unjust enrichment. The plaintiffs now move for class certification under Federal Rule of Civil Procedure 23(b)(3) in connection with their claims for

rescission, breach of contract, and unjust enrichment. The plaintiffs seek to certify a class of:

> All employers doing business in New York that purchased Workers' Compensation Insurance from Defendants that was issued or delivered to these employers in New York as part of a Profit Sharing plan, which included the Reinsurance Participation Agreement as a component of that Plan, and that were charged more pursuant to the terms of the Reinsurance Participation Agreement than they would have otherwise been charged under the terms of Guaranteed Cost Insurance Policies . . . .

(Id. ¶ 126.)

Although not mentioned in the plaintiffs' pleadings, the defendants assert that some or all of the putative class members' reinsurance participation agreements included either a mandatory forum selection clause in favor of Nebraska jurisdiction or a class action waiver, or both. (Butler Decl. ¶¶ 4-8.)

## II.

### A.

Under Federal Rule of Civil Procedure 23, a class may be certified only if the proposed class satisfies four requirements: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); Marisol A. v. Giuliani, 126 F.3d 372, 375 (2d Cir. 1997). To satisfy numerosity, "the class must be so numerous that joinder of all members is impracticable." Brown v. Kelly, 609 F.3d 467, 475 (2d Cir.

4

2010) (quoting Fed. R. Civ. P. 23(a)(1)). Commonality requires that there be "a common question of law or fact shared by the class." Id. Typicality is met if "the claims or defenses of the class representatives [are] typical of the claims or defenses of the class members." Id. Adequacy is met when "the representative parties will fairly and adequately protect the interests of the class." Id.

In addition to these four prerequisites, a class may be certified only if it is deemed appropriate under one of the subdivisions of Rule 23(b). Id. at 476. The plaintiffs argue that the proposed class is appropriate under Rule 23(b)(3). Under Rule 23(b)(3), the plaintiff has the burden of showing predominance and superiority; that is, "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**B.**

It is not necessary to discuss all of the Rule 23 factors because the plaintiffs have failed to show that the class action procedure would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

5

Rule 23(b)(3) sets forth four non-exhaustive factors to be used in determining predominance and superiority: (1) the class members' interests in individually controlling the litigation, (2) the extent and nature of any litigation concerning the controversy already begun by class members, (3) the desirability of concentrating the litigation in the particular forum, and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). These factors favor the defendants.

### 1.

The first factor considers whether the class members have a strong interest in individually controlling the litigation. In this case, each putative class member is a business that stands to recover a large sum of money. The plaintiffs allege that there are 220 potential class members and that they are owed a collective $62 million dollars. The Supreme Court has stated that the benefits of class actions are best realized where the likely recovery is too small to incentivize individual lawsuits. See Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)); see also Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010) (the superiority prong

was satisfied where "the district court correctly determined that proceeding individually would be prohibitive for class members with small claims"); In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., 209 F.R.D. 323, 350 (S.D.N.Y. 2002) ("The most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit." (quotation marks omitted)); Steinmetz v. Bache & Co., 71 F.R.D. 202, 206 (S.D.N.Y. 1976) (Weinfeld, J.) (denying class action status under Rule 23(b)(3) where the plaintiffs "sue[d] for a sum twice that of many other litigants who ha[d] been able to maintain their suits without class action certification"). In this case, the potential recovery per plaintiff is high, and the plaintiffs are businesses that are capable of asserting their own claims.

That members of the putative class may possibly recover large amounts is not dispositive of the superiority analysis. Indeed, courts in this district have found that a class action was the superior form of adjudication in complex cases with large dollar amounts at issue for the individual putative class members. See Thompson v. Wherehouse Entm't, Inc., No. 88cv9040, 1992 WL 110993, at *5 (S.D.N.Y. Apr. 24, 1992). However, the size of the potential recovery per class member is an important consideration, and the superiority analysis favors smaller potential recoveries. See Seijas, 606 F.3d at 58.

7

Therefore, this factor weighs against class certification.

## 2.

The second factor considers whether members of the putative class have already brought suit against the defendants. If the court finds that "several other actions already are pending and that a clear threat of multiplicity and a risk of inconsistent adjudications actually exist, a class action may not be appropriate since, unless the other suits can be enjoined, . . . a Rule 23 proceeding only might create one more action." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1191 (9th Cir. 2001) (quoting Wright & Miller, Fed. Prac. & Proc. Civ. § 1780 (2d ed.)).

The defendants assert, and the plaintiffs do not deny, that at least twelve other individual actions and arbitrations have been filed by putative class members in New York. (Stephens Decl. ¶ 2.) This creates issues in determining which of those actions, if any, should be enjoined. Shasta Linen Supply, Inc. v. Applied Underwriters, Inc., No. 16cv1211, 2019 WL 358517, at *5 (E.D. Cal. Jan. 29, 2019) ("If other actions must be enjoined, the court would have to determine the extent to which this action overlaps and takes precedence over those matters."). Furthermore, these other actions show that class members are interested in pursuing litigation individually and are in fact pursing litigation individually.

Therefore, this factor favors the defendants.

### 3.

The third factor considers the desirability of concentrating the litigation in the particular forum. The plaintiffs argue that "[t]here is no evidence showing that a different forum has a greater interest in this action." (Pls.' Mem. at 31.) All of the proposed class members do business in New York and New York law would allegedly apply to all of the class claims. This would, seemingly, make New York the forum with the greatest interest in this case. However, the defendants assert that "every proposed class member has signed [a reinsurance participation agreement] that contains either a mandatory Nebraska forum selection clause or a class action waiver." (Defs.' Opp'n at 20.) The plaintiffs do not dispute that the putative class members agreed to either a Nebraska forum selection clause or a class action waiver clause, or both. Rather, the plaintiffs argue that the Court should not consider those clauses until after the class is certified.

Courts have found that similar contractual provisions prevented plaintiffs from establishing the class action procedure as the superior method of adjudication. See Tan v. Grubhub, Inc., No. 15cv05128, 2016 WL 4721439, at *5 (N.D. Cal. July 19, 2016) ("[T]he class action waiver provisions prevent the resolution of claims for all members in a single

9

adjudication . . . . This restriction . . . prevents [the plaintiff] from establishing that the class action procedure is a superior method of adjudication."); Pablo v. Serv. Master Global Holdings, Inc., 2011 WL 3476473, at *2 (N.D. Cal. Aug. 9, 2011) (same).

Accordingly, this factor weighs against class certification.

**4.**

The fourth factor considers the manageability of the class action. "[T]his consideration encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 164 (1974). Manageability is by far "the most critical concern in determining whether a class action is a superior means of adjudication." Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 82 (2d Cir. 2015) (quotation marks omitted) (quoting Newberg on Class Actions § 4.72 (5th ed. 2014)). In this case, there are manageability issues that militate against finding that the class action is the superior method of adjudication.

First, as discussed above, at least twelve other individual actions and arbitrations have been filed by New York putative class members. This creates issues in determining which of

those actions should be enjoined. Shasta Linen Supply, 2019 WL 358517, at *5.

Second, the class action waivers and forum selection clauses signed by some or all of the putative class members will create a host of issues. See Tan, 2016 WL 4721439, at *5. The defendants represent that all of the putative class members have signed Nebraska forum selection clauses, and that many of the putative class members have signed class action waivers. Thus, if a class were certified, the parties and the Court would then have to determine which class members were properly a part of this case. This would require an individualized inquiry into which class members agreed to these provisions. Pablo, 2011 WL 3476473, at *2 (holding superiority was not satisfied where "a significant portion of this litigation would be devoted to discovering which class members signed [arbitration] agreements and enforcing those agreements"). And, to the extent that the forum selection and class action waiver clauses are applicable and enforceable, the Court would be required to dismiss class members from the case. Such an undertaking is especially unnecessary where the potential recovery for the individual plaintiffs is large and the putative class members have an interest in litigating individually.

Therefore, this factor weighs against class certification.

   \*     \*     \*

Because the 23(b)(3) factors weigh against granting class certification, the class action is not the superior form of adjudication. Accordingly, the plaintiffs' motion for class certification is **denied**.[3]

## CONCLUSION

The plaintiffs' motion for class certification is **denied**. The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The Clerk of Court is directed to close docket numbers 124 and 127.

**SO ORDERED.**

**Dated:** **New York, New York**
    **July 27, 2019**

                _____
                **John G. Koeltl**
                **United States District Judge**

---

[3] The Court's decision is buttressed by a recent decision from the Eastern District of California. In Shasta Linen Supply, Inc. v. Applied Underwriters, Inc., the plaintiffs sued four of the defendants who are defendants in this case: Applied Underwriters Captive Risk Assurance Company, Inc., Applied Underwriters, Inc., Applied Risk Services, Inc., and California Insurance Company. 2019 WL 358517, at *1. The plaintiffs in that case raised essentially the same allegations present in this case and sought to certify a class of California businesses that had been harmed by the defendants' reinsurance participation agreements. Id. The court held that the class should not be certified because it found that, among other things, a large sum of money was at issue for each putative class member and numerous other cases had already been filed against the defendants. Id. at *3-6. These issues created manageability concerns, and the court found that the class action was not the superior form of adjudicating the putative class members' claims. Id. at *7.